IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| TERESA V. N., | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18-CV-223-JFJ |
| v. | ) |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Teresa N. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income under Title XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.  Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotations omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 52-year-old female, protectively applied for Title XVI supplemental security income benefits on October 17, 2014, alleging a disability onset date of October 17, 2014. R. 208. Plaintiff claimed that she was unable to work due to depression, being suicidal, migraines, skin lesions, sleeping problems, inability to be around people, headaches, inability to sit still, and being very nervous. R. 267. Plaintiff's claim for benefits was denied initially on March 17, 2015, and on reconsideration on May 20, 2015. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ conducted the hearing on December 7, 2016. The ALJ issued a decision on January 4, 2017, denying benefits and finding Plaintiff not disabled. The Appeals Council denied review, and Plaintiff appealed.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of October 17, 2014. The ALJ found that Plaintiff had the following severe impairments: possible delusional disorder/Morgellon's disease. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments of such severity to result in listing-level impairments. After evaluating the record evidence, the ALJ concluded as follows with respect to Plaintiff's residual functioning capacity ("RFC"):

> [C]laimant has the [RFC] to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b). Specifically the claimant is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, and sit, stand, and/or walk 6 hours in an 8-hour workday, with normal breaks. *Additionally, the claimant can perform*

2

> *superficial and incidental work related interaction with co-workers and supervisors, but not the public, and she is limited to simple and routine tasks such as those in unskilled work.*

R. 15 (emphasis added). The ALJ found that Plaintiff was unable to return to her past relevant work as a collection clerk. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff was capable of making a successful adjustment to other work that exits in significant numbers in the national economy. Accordingly, the ALJ concluded Plaintiff was not disabled.

## III. Issues

Plaintiff raises four issues on appeal: (1) the ALJ erred in her treatment of the psychiatric medical opinions of consultative examiners Dr. Dennis Rawlings and Dr. Brian Snider, and the ALJ's mental RFC findings are therefore not supported by substantial evidence; (2) the ALJ's consistency findings are not supported by substantial evidence; (3) the ALJ failed to follow clear vocational testimony in favor of Plaintiff; and (4) the ALJ's appointment was invalid under the U.S. Constitution, rendering the decision invalid. The Court finds the ALJ erred by wholly ignoring Dr. Rawlings' medical opinion and that the error is not harmless. The Court does not reach the other arguments.[1]

## IV. Analysis

In her first proposition of error, Plaintiff contends that the ALJ committed error by: (1) improperly ignoring the medical opinion of Dr. Rawlings; and (2) improperly rejecting the medical opinion of Dr. Snider to the extent he found more severe mental limitations than those adopted by the ALJ.

---

[1] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal. Because the Court finds other grounds for reversal, the Court does not reach the Appointments Clause issue.

### A. Mental Health Opinions by Dr. Rawlings (2011) and Dr. Snider (2015)

On June 6, 2011, Dr. Rawlings conducted a mental status exam report of Plaintiff, which was considered by a different ALJ in a prior disability proceeding.[2] Dr. Rawlings described Plaintiff as follows:

> As the exam progresses she changes posture frequently, scratching herself, squeezing areas of skin with old and recent scars and some open sores. Attitude is initially deferential, soft spoken, cooperative and talkative. She becomes anxious and goes on and on about her skin itching; pointing at numerous scars complaining about bugs crawling on her. She talks of using a magnifying glass to see them and pull them out. She is restless. She wiggles and scratches continually. She is trembling and shaking. She asks for rubbing alcohol to clean the sores . . . She cries saying this stuff is driving me crazy and sobs and sobs. She is difficult to redirect. Eye contact is poor, avoidant downcast and cooperation is poor. Toward the middle of the exam she is more forthcoming. Malingering cannot be ruled out, but none suspected. Her response style is to exaggerate, but she is obviously anguished.

R. 411-12 (internal quotations omitted). Dr. Rawlings noted involuntary movement of twitching, trembling and shaking legs, continual scratchings and picking at herself. R. 412. He noted that Plaintiff's daughter, an adult college student, said this was "the way she is all the time" and that her skin condition had been present for a long time. R. 412, 417. He noted that "[s]he is presenting with claims of bugs and worms coming out of her skin lesions. She appears totally convinced. Her body is covered with scars." R. 417.

Dr. Rawlings diagnosed Plaintiff with Delusional Disorder, Morgellon's Syndrome,[3] Bipolar I Disorder, most recent episode mixed, with psychotic features; and Cannabis Dependence. R. 418. He gave her a GAF score 45-40 and recommended that Plaintiff (1) receive inpatient psychiatric treatment as soon as possible at Tulsa Center for Behavioral Health; (2) receive psychiatric evaluation and treatment for Bipolar I with psychotic features and Morgellon's

---

[2] At the conclusion of that proceeding, Plaintiff was found not disabled for the period of July 2009 through November 2012.

[3] The record indicates that "Morgellons disease" is also known as delusional infestation, or the belief that there is a pathogenic infestation despite contrary medical evidence.

Delusional Disorder; (3) abstain from alcohol/drugs for life; and (4) be referred to CMHC/Day Program. R. 418. Dr. Rawlings gave a "capability opinion" that she was not able to manage benefit payments in his/her own interest. R. 419.

On February 17, 2015, Dr. Snider conducted a consultative examination of Plaintiff for purposes of the instant application. Consistent with Dr. Rawlings, Dr. Snider reported that Plaintiff felt "bugs crawling under her skin and that they will occasionally surface and that she will pick them out of her skin" and further reported that she had multiple scars on her face and body. R. 421. She reported pressure inside her head "like something was trying to get out" and described the bugs as "white, gooey, and elastic." R. 421. Dr. Snider stated that "[t]hese types of Somatic symptoms were noted in Dr. Rawlings' mental status exam report from 2011 included in the records provided by the [DDD]." R. 421. Dr. Snider reported significant past trauma, including being abducted and raped at gunpoint at age eighteen. R. 421.

Dr. Snider's diagnostic impressions were: Delusional Disorder (insect infestation under the skin); Rule Out Bipolar I Disorder, Most Recent Episode Depressed-Severe with Mood-Incongruent Psychotic Features; Posttraumatic Stress Disorder; and Cannabis Use Disorder. With respect to functional impairments, Dr. Snider concluded that Plaintiff would have "marked-severe difficulty concentrating and persisting through a normal work day due to her psychiatric symptoms;" and her "ability to maintain a normal workday and work week without interruptions from her psychiatric symptoms is likely markedly-severely impaired," and that she would have "marked-severe difficulty responding appropriately to coworkers, supervisors, and the public." R. 425.

B. **ALJ's Treatment of Such Opinions**

The ALJ expressly refused to consider Dr. Rawlings' medical opinion. During the hearing, after testimony regarding the delusional disorder, the ALJ stated: "I can't, I won't consider

5

evidence that's already been adjudicated, so I'm starting with, I'm looking at [] Dr. Snyder's report at C-5F." R. 177. Consistently, in the ALJ's written decision, she stated: "Additionally, the [ALJ] finds the consultative examination performed by Dennis A. Rawlings, Ph.D. on June 6, 2011 has been adjudicated in the previous unfavorable decision, as well as the treatment records of David L. Shadid." R. 21. Based on these statements, the record clearly indicates the ALJ failed to consider the opinion, rather than merely failed to discuss or weigh the opinion in her written decision.

The ALJ discussed Dr. Snider's opinion at length, including his proposed functional impairments. R. 17. But the ALJ gave "reduced weight" to Dr. Snider's opinion as to mental functioning, because "it appears to be only partially consistent with the medical evidence of record, only partially consistent with Dr. Snider's own directly observed functioning, noted in the body of his report, and inconsistent with the observed functioning at the physical consultative examination (Dr. Roberts)." R. 21. The ALJ found that, when Plaintiff appeared for a physical examination by Dr. Roberts on March 14, 2015, "there was no mention of bugs or scars from her picking the bugs from her body." R. 21. She gave "great weight" to the Disability Determination Explanation-Psychiatric Review Technique Form and Supplement Mental Residual Functioning Capacity completed by Dr. Stephen Scott on May 13, 2015 and relied on this opinion in determining Plaintiff's mental RFC. Dr. Scott found that Dr. Snider's opinion was contradicted in part by Dr. Snider's own observations and other objective medical evidence in the record. Dr. Scott ultimately concluded that "evidence in file indicates MH problems moderately limit global functioning." R. 174.

    **C.    ALJ Committed Reversible Error by Ignoring/Refusing to Consider Dr. Rawlings' Opinion**

In a published decision in 2004, the Tenth Circuit held that "even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously

adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be *considered* by the ALJ." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). This language has resulted in reversal where an ALJ wholly ignored or refused to consider prior medical opinions regarding an ongoing condition alleged to be disabling in the plaintiff's pending disability proceeding. *See, e.g., Schoonmaker v. Berryhill,* No. CIV-16-1145-R, 2017 WL 4422597, at *3 (W.D. Okla. Oct. 5, 2017) (citing *Hamlin*, finding reversible legal error where ALJ ignored mental health opinion pre-dating alleged onset date, and where ignored medical opinion did not involve "some discrete easy-cure event that the ALJ would have necessarily discounted in her later disability determination"); *Austin v. Colvin*, No. CIV-13-467-SPS, 2015 WL 1209384, at *4 (E.D. Okla. Mar. 17, 2015) (finding reversible legal error where ALJ ignored medical opinion issued during period prior to the plaintiff's alleged onset date). *See generally Farrell v. Colvin*, No. 2:15-CV-09229-JTM, 2016 WL 4128452, at *5 (D. Kan. Aug. 3, 2016) (records from before amended onset date "are nonetheless part of Plaintiff's case record and should be considered").

Here, Dr. Rawlings' opinion discussed an ongoing mental health condition that was relevant to both proceedings. In fact, Dr. Rawlings provided the original diagnosis of the condition found by the ALJ to constitute a severe mental impairment - namely, possible delusional disorder/Morgellon's disease. This was also diagnosed by Dr. Snider in 2015. Yet the ALJ expressly disavowed any *consideration* of Dr. Rawlings' similar opinion in 2011, because it had already been "adjudicated." *Hamlin* and its progeny indicate that an unfavorable decision by one ALJ does not prevent a subsequent ALJ from reviewing medical records considered by the former ALJ. The medical record has not been "adjudicated"; the prior period of disability has. The Court finds the ALJ committed legal error by refusing to consider Dr. Rawlings' opinion. Notably, this case does not involve a mere failure to discuss, weigh, or explain the reasons for discounting a

7

medical opinion; it involves an express refusal to consider a directly relevant mental health opinion.[4]

The Court rejects the Commissioner's one-paragraph argument attempting to justify the ALJ's treatment Dr. Rawlings' opinion. *See* ECF No. 18 at 2-3. The Commissioner argues that the ALJ properly ignored the medical opinion based on the principle of "administrative res judicata." The Commissioner cites 20 C.F.R. § 416.1457(c)(1), which provides an ALJ may "decide[] that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because - (1) the doctrine of res judicate applies in that we have made a previous determination . . . about your rights on the same facts and on the same issue or issues, and this previous determination has become final . . . ." Plaintiff presented a new disability application for a different time period, and the ALJ granted a hearing to determine whether Plaintiff was disabled for that period. This regulation does not indicate that an ALJ may refuse to consider a medical record simply because it was relevant to a previously adjudicated period of disability. Not only *may* the ALJ consider the medical records for purposes of adjudicating a new alleged period of disability, the ALJ is *required* to do so if they relate to an ongoing, relevant medical condition or impairment. *See Hamlin*, 365 F.3d at 1215. Accordingly, the Commissioner's res judicata argument is unavailing.

---

[4] In a recent, unpublished decision, the Tenth Circuit stated that the plaintiff "cites no authority, and we have found none, requiring an ALJ and agency reviewers to *discuss* the opinions of a consultative examiner from a prior disability proceeding - one that may have involved different medical issues and evidence, and that resulted in a denial of benefits." *Arterberry v. Berryhill*, 743 F. App'x 227, 230 (10th Cir. 2018) (emphasis added). *See also Martin v. Berryhill*, No. CIV-18-260, 2018 WL 6314594, at *3, 4 (W.D. Okla. Nov. 8, 2018) (examining *Arterberry* and finding no error where ALJ failed to discuss medical opinion pre-dating alleged onset date). Because *Arterberry* is unpublished and was not raised by the Commissioner, the Court does not reach the issue of whether *Arterberry* conflicts with *Hamlin*, and the Court relies on the principles articulated in *Hamlin*. Further, *Arterberry* is factually distinguishable because it involved a failure to discuss, rather than an outright refusal to consider.

The Court also concludes the error was not harmless. As explained above, Dr. Rawlings' examination findings and diagnoses were inconsistent with the mental RFC adopted by the ALJ, and consistent with Dr. Snider's mental functional impairments, which the ALJ rejected. Making the error more problematic, Dr. Snider himself discussed Plaintiff's symptoms being consistent with those reported to Dr. Rawlings in 2011. To fully examine and weigh Dr. Snider's opinion, the ALJ needed to consider Dr. Rawlings' prior opinions. Although an ALJ may find that consideration of Dr. Rawlings' opinion does not change the outcome, the Court cannot reach that conclusion in the first instance. Instead, the Court finds that a reasonable administrative factfinder who considered Dr. Rawlings' opinion may give more weight to Dr. Snider's subsequent opinion and/or impose more severe limitations in determining Plaintiff's mental RFC. Further, the vocational expert testified that the mental limitations imposed by Dr. Snider would eliminate competitive employment either singularly or in combination. R. 126-27. The Court cannot find harmless error in these circumstances. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (harmless error doctrine applies only in the "exceptional circumstance" where the court could confidently say that no reasonable administrative factfinder could have resolved the factual matter in any other way); *Schoonmaker*, 2017 WL 4422597, at *3 (explaining that, in assessing harmlessness of failure to consider medical opinion, court looks to whether there is inconsistency between the omitted opinion and the ALJ's assessment).

### V. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should consider the opinion of Dr. Rawling in determining Plaintiff's mental RFC and re-weigh any other medical opinions as needed.

**SO ORDERED** this 30th day of September, 2019.

JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT